UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| Earl Thompson,<br><br>                    Plaintiff,<br><br>v.<br><br>Robert Martin, Warden<br><br>                    Defendant. | Civil No. 3:21-CV-00262 (MEG)<br><br><br>October 31, 2023 |

### RULING on MOTION TO DISMISS

Plaintiff, Earl Thompson asserts claims under 42 U.S.C. § 1983 alleging that Defendant, Robert Martin, Warden of Corrigan-Radgowski ("Corrigan") Correctional Center violated his First and Eighth Amendment rights to the United States Constitution. ECF No. 70 (Amended Complaint).

Warden Martin moves to dismiss Count Two of the Amended Complaint, a First Amendment retaliation claim, arguing that Plaintiff failed to exhaust administrative remedies before filing his Amended Complaint as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). ECF No. 72, 84. Plaintiff opposes the motion arguing that "administrative remedies were unavailable to him, and therefore [he] was not required to exhaust. . . ." ECF No. 81, at 1. Specifically, he argues that the "retaliation claim did not occur, and thus his claim did not accrue, until nearly a year *after* he filed his original complaint." *Id.* (emphasis added). For the reasons that follow, Defendant's Motion to Dismiss is denied. ECF No. 72.

1

## I.    PROCEDURAL BACKGROUND

Plaintiff commenced this *pro se* civil rights action on March 1, 2021, asserting claims under the Eighth Amendment for deliberate indifference to a substantial risk of serious harm and under the Fourteenth Amendment's Equal Protection Clause.  ECF No. 1.  An Initial Review Order ("IRO") issued on November 15, 2021, permitting Plaintiff's "Eighth Amendment deliberate indifference claim [to] proceed against Robert Martin in his individual capacity for money damages and in his official capacity for injunctive relief."  *Thompson v. Quiros*, No. 3:21-CV-00262 (JAM), 2021 WL 5301240, at *6 (D. Conn. Nov. 15, 2021).

On September 12, 2022, Defendant filed his Answer to the Complaint, ECF No. 38, and on September 13, 2022, the Court directed the Clerk of the Court to appoint *pro bono* counsel.[1]  ECF No. 40.  On March 3, 2023, Plaintiff, through counsel, filed an Amended Complaint adding a claim for retaliation in violation of the First Amendment.  ECF No. 70.  On May 12, 2023, Defendant filed a Motion to Dismiss the First Amendment retaliation claim.  ECF No. 72.  A reply brief was filed with leave of the Court on August 9, 2023.  ECF No. 84.

## II.    AMENDED COMPLAINT

The following facts, set forth in Plaintiff's Amended Complaint, are accepted as true for purposes of ruling on a Motion to Dismiss.  *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) ("In reviewing a Rule 12(b)(6) dismissal, we must accept as true all nonconclusory factual allegations in the complaint and draw all reasonable inferences in the Plaintiffs' favor.").

*March 2020 COVID-19 Pandemic -Requests for a Single Cell*

---

[1]    On October 26, 2022, the Clerk of the Court appointed current counsel.  ECF No. 51.

On or about March 10, 2020, Connecticut Governor Ned Lamont declared a Public Health Emergency due to the COVID-19 pandemic. Amend. Compl., ECF No. 70, ¶9. At that time, Plaintiff, an inmate in the custody of the Connecticut Department of Correction ("DOC"), was housed at Corrigan. *Id.*, ¶4. Defendant Robert Martin is a DOC employee. *Id.*, ¶5. At all relevant times to this action, he served as the Warden of Corrigan, and was acting under color of state law. *Id.* As Warden at Corrigan, Martin had direct knowledge of and authority over the conditions of incarceration at Corrigan, including cell assignments of inmates. *Id.* Plaintiff suffers from symptoms of Post-Traumatic Stress Disorder ("PTSD"), and a diagnosed autoimmune disorder, both of which "require that he be housed in a cell without a cellmate." *Id.*, ¶¶ 6-8.

On or about May, 30, 2020 and August 1, 2020, Thompson wrote letters to Warden Martin, requesting to be housed in a single cell due to his PTSD symptoms and autoimmune disorder. *Id.*, ¶¶10, 11. On August 28, 2020, the Warden responded to Thompson, denying his request for a single cell and suggested that Plaintiff contact the mental health doctor if he needed mental health treatment. *Id.*, ¶11. Plaintiff sought reconsideration of the denial on August 28, 2020. *Id.*, ¶13.

On or about September 8, 2020 and December 11, 2020, Thompson wrote to the Commissioner of Corrections. The letter was marked "received" on March 9, 2021, and was responded to on March 15, 2021, denying Plaintiff's request for a single cell. *Id.*, ¶¶14, 32.

On January 22, 2021, Plaintiff wrote to Warden Martin requesting housing in a single cell. *Id.*, ¶16. On the same day, Plaintiff filed a grievance regarding the repeated denials of his housing requests for a single cell. *Id.*, ¶17. On or about January 25, 2021, Plaintiff's then-counsel wrote a letter to Warden Martin requesting housing in a single cell due to underlying health conditions. *Id.*, ¶18. On January 27, 2021, Plaintiff's hematologist recommended single cell housing due to his underlying health issues. *Id.*, ¶19. Plaintiff's January 22, 2021, grievance was denied on

February 4, 2021, stating in part, "Single cell is denied. Should you need mental health, please write to them, if it is an emergency please stop an officer on tour and let them know." *Id.*, ¶20. The grievance form noted that the decision could be appealed. On February 8, 2021, Thompson spoke to Warden Martin regarding his request to be housed in a single cell. *Id.*, ¶21.

On or about February 9, 2021, an inmate was transferred to Plaintiff's cell. *Id.*, ¶22. The inmate had previously tested positive for COVID-19, was actively displaying symptoms of COVID-19, and was not re-tested before the transfer to Plaintiff's cell. *Id.*

Thereafter, Thompson tried to obtain the original grievance form and the response so he could appeal. *Id.*, ¶26. He was informed that his original January 22, 2021 grievance form was destroyed. *Id.* On February 28, 2021, when it was already too late to appeal, Thompson received a legible copy of his grievance and response from prison officials. *Id.*, ¶27. The instant lawsuit was filed on March 1, 2021.

### *February 4, 2022-Move to a "Dry" Medical Cell*

On November 15, 2021, an IRO ruling was filed, ECF No. 12, and the waiver of service was returned executed for Defendant on December 3, 2021. ECF No. 15. On January 25, 2022, Judge Meyer ordered Defendant to respond to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 10, by February 8, 2022. ECF No. 18. Days after the order entered, on or about February 4, 2022, Plaintiff was moved to a "dry" medical cell. *Id.*, ¶¶35-36, 38. During the move, one of the Correctional Officers ("COs"), acting at Warden Martin's direction, stated "I was told to come pack up some asshole who keeps filing lawsuits but it is just you Thompson." *Id.*, ¶37. Due to the transfer to a medical cell, Plaintiff was denied his possessions, recreation time and was not permitted any type of bedding, books or television. *Id.*, ¶38. Among his confiscated belongings was a Memorex boombox, television and other personal

4

property. *Id.*, ¶39. While in the possession of the DOC, both his Memorex boombox and television were damaged. *Id.*, at ¶39-40. On or about March 4, 2022, Thompson filed a property claim seeking to have his television and boombox fixed or replaced. *Id.*, ¶42. In April 2022, prison officials replaced Thompson's television but not his boombox. *Id.*, ¶43. Prison officials, including Lieutenant Pearson, misrepresented to Thompson that his boombox would be replaced, stating that they would pay for a replacement boombox "in order to avoid the long grievance process." *Id.*, ¶44.

*July 14, 2022-Transfer to MacDougall-Walker ("MacDougall") Correctional Institution*

Plaintiff remained in the medical cell at Corrigan until transfer to MacDougall on July 8, 2022. *Id.*, ¶41, 45.

On or about July 14, 2022, while housed at MacDougall, Thompson filed a grievance, asking that it be submitted to Warden Martin at Corrigan, regarding the destruction of his boombox and requesting a replacement. *Id.*, ¶46. He also filed an Inmate Request Form on August 4, 2022, and Level 1 Grievance on August 17, 2022, regarding the destruction of his boombox. *Id.*, ¶¶46-48. On or about August 18, 2022, Warden Martin responded to the July 14 grievance, stating that his boombox was "not on the approval boom box list" and if Thompson had a court order stating that Thompson was approved to have a boombox he could forward that request to the warden at MacDougall. *Id.*, ¶49. On or about September 7, 2022, MacDougall officials responded to the August 4, Inmate Request Form, stating that Lieutenant Pearson had inquired about Thompson's request regarding the boombox, but Thompson was transferred and Warden Martin did not provide approval for a new boombox prior to the transfer. Therefore, Thompson was directed to write to Warden Martin. *Id.*, ¶50. On or about August 26, 2022, Thompson wrote to prison officials at MacDougall to request a new boombox that the Corrigan officials promised to replace. Thompson

5

offered to pay for the replacement boombox. *Id.*, ¶51  Each of these attempts at resolution were denied. *Id.*, ¶¶49-52.

Plaintiff alleges that Warden Martin "stonewalled and ignored [his] requests for months while he was housed at Corrigan, transferred him to another facility, and continued to deny his requests post-transfer in retaliation for filing of this lawsuit and grievances, resulting in an ongoing violation of [his] First Amendment rights." *Id.*, ¶53.

### III. STANDARD OF LAW

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement, 'but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.*. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010). Although the Court may consider affirmative defenses in deciding a Rule 12(b)(6) motion, it may do so only if all of the facts necessary to the resolution of the motion appear on the face of the complaint. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

### IV. DISCUSSION

Warden Martin moves to dismiss Plaintiff's First Amendment retaliation claim, arguing that Plaintiff failed to exhaust administrative remedies before filing his Amended Complaint as

required by the PLRA, 42 U.S.C. § 1997e(a).  Specifically, he contends that although Plaintiff alleges that he submitted a property claim and Level 1 grievance related to the boombox, he fails to "allege that he filed a Level 2 grievance" and fails to allege that "he filed a property claim with the Office of the Claims Commissioner, as required by Administrative Directive 9.6(9)(f)." ECF No. 84, at 3.

The PLRA requires prisoners to exhaust administrative remedies before filing a federal lawsuit.  *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes[.]"  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly.  *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).  "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011).  Exhaustion of administrative remedies must be completed *before* the inmate files suit.  *Baez v. Kahanowicz*, 278 Fed. App'x 27, 29 (2d Cir. 2008) (summary order) (emphasis added).  Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

"An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable." *Johnson v. Barone,* 3:21-cv-01514 (KAD), 2023 WL 3949039, at *3 (D. Conn. June 12, 2023) (citing *Ross v. Blake*, 578 U.S. 632, 642 (2016)).  "An administrative

procedure is 'unavailable when (1) 'it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; '(2) the scheme is 'so opaque that it becomes, practically speaking, incapable of use, 'meaning that 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it; 'or (3) 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation'" *Dickinson v. York*, 828 F. App'x 780, 782 (2d Cir. 2020) (summary order) (quoting *Ross*, 578 U.S. at 643-44). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." [2] *Jones*, 549 U.S. at 218. Notably, "the Second Circuit has 'reiterated 'that '*Ross*'s three circumstances are not 'exhaustive' of all the circumstances in which an administrative remedy can be considered 'unavailable.'" *Lusmat v. Papoosha*, No. 3:20-CV-1386 (RMS), 2023 WL 4236012, at *5 (D. Conn. June 28, 2023) (quoting *Romano v. Ulrich* , 49 F.4th 153, 155 (2d Cir. 2022); *Williams v. Priatno,* 829 F.3d 118, 123, n.2 (2d Cir. 2016) (the "three circumstances discussed in *Ross* do not appear to be exhaustive.")).

"Exhaustion of administrative remedies is an affirmative defense." *Lindsay v. Cook*, No. 3:19CV1486 (JCH), 2021 WL 5827080, at *4 (D. Conn. Dec. 7, 2021) (citing *Jones*, 549 U.S. at 216). Thus, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Nevertheless, a defendant may move for dismissal if the failure to exhaust administrative remedies under the prison grievance program is clear from the face of the complaint. *See, e.g.*, *Williams*, 829 F.3d at 122 ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints . . . . However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the

---

[2] The Connecticut Department of Correction has a well-established inmate grievance program, which is set forth in its Administrative Directive 9.6.

complaint that the plaintiff did not satisfy the PLRA exhaustion requirement.") (quotations and citations omitted); *Torrence v. Pesanti*, 239 F. Supp. 2d 230, 233 (D. Conn. 2003) (because "failure to exhaust administrative remedies under the PLRA is an affirmative defense.... [it] is not a ground for dismissal unless it is readily apparent from plaintiff's pleadings and/or attachments").

### A.     *Administrative Remedies Were Not Exhausted.*

Defendant argues that there is no dispute that Plaintiff did not exhaust administrative remedies related to his retaliation claim prior to bringing this action. An Amended Complaint was filed on March 3, 2023, seeking to add an additional First Amendment retaliation claim. Plaintiff does not dispute these facts. Defendant contends that the only facts relevant to whether Plaintiff failed to exhaust administrative remedies related to the retaliation action are as follows, that Warden Martin ordered that (1) Plaintiff be housed with an inmate from the COVID-positive unit on February 9, 2022; (2) Plaintiff be transferred to the medical unit at Corrigan on February 4, 2022, without his personal property; and (3) the destruction of Plaintiff's personal property. ECF No. 72-1, at 1. Plaintiff filed grievances related *only* to his property beginning on March 4, 2022, "seeking to have his television and boombox fixed or replaced." *Id.,* at 2. On this record, the Court finds that Plaintiff failed to exhaust administrative remedies as required under the PLRA.

### B.     *Plaintiff Has Not Shown that Administrative Remedies were "Unavailable".*

Once Defendant establishes that administrative remedies were not exhausted prior to filing this federal action, then Plaintiff has the burden of showing that the administrative remedy procedures were not available to him. *Lindsay,* 2021 WL 5827080, at *4 *(*citing *White v. Velie*, 709 F. App'x 35, 36–39 (2d Cir. 2017) (summary order) ("Once defendants have met their initial burden of demonstrating that a grievance process exists, however, a plaintiff bears the burden of 'demonstrat[ing] that other factors ... rendered a nominally available procedure unavailable as a

matter of fact.'")). Plaintiff argues that the "Amended Complaint alleges that Plaintiff was *unable* to exhaust his administrative remedies with respect to his retaliation claim, which is sufficient to meet the statutory pleading requirement." ECF No. 81, at 6 (emphasis in original). He first argues that he should be excused from the statutory requirement of exhaustion because the remedies were unavailable to him due to prison officials "deliberately and routinely 'thwart[ing]' him from exhausting his administrative remedies." ECF No. 81, at 7 (citing Amend. Compl. ECF No. 70, ¶¶49-53). Second, he asserts that "prior attempts to exercise his rights, whether by participating in the administrative remedy process or the judicial process, were met with a wide range of resistance, including (a) destruction of his grievance form; (b) destruction of his property; (c) stripping him of access to his already-limited rights by placing him in a dry cell for no valid medical reason; and (d) housing him with an inmate actively displaying symptoms of COVID-19, despite knowing that the virus presents a heightened risk of mortality to Plaintiff due to his pre-existing condition. *Id.,* at 7-8 (citing Amend. Compl., ECF No. 70, ¶¶27-29, 35-44). He argues that, this record demonstrates that prison officials prevented him from exhausting administrative remedies. *Id.,* at 8 (citing *Gibson v. Rosati*, 9:13-cv-503 (GLS/TWD), 2014 WL 3809162, *9 (N.D.N.Y. Aug. 1, 2014) (denying motion to dismiss and scheduling an evidentiary hearing to permit Plaintiff the "opportunity to develop facts that "could establish either that the grievance procedure was effectively unavailable or that special circumstances justified his failure to exhaust.")). Defendant responds that "Plaintiff alleges not only that remedies were *available* to him, but that he filed grievances, received partial relief as a result, and also received substantive denials of those grievances." ECF No. 84, at 1.

The Court declines to find that Plaintiff's First Amendment retaliation claim should be dismissed because he has not established that administrative remedies were "unavailable" at this

stage of the case. Plaintiff has plausibly alleged that he was prevented or thwarted from exhausting administrative remedies and Defendant will have an opportunity to pursue his defense at the summary judgment stage. *Santana v. Quiros,* 3:21-cv-00374 (SVN), 2022 WL 16706959, at *9 (D. Conn. Nov. 4, 2022) (citing *Mateo v. O'Connor*, No. 08 Civ. 11053 (RJH) (DCF), 2010 WL 3199690, at *2 (S.D.N.Y. Aug. 12, 2010) (recognizing that exhaustion of administrative remedies is "often a matter best left for resolution at the summary judgment stage.")); *Toussaint v. Guadarama*, No. 3:21-cv-00032 (MPS), 2022 WL 19337, at *5 (D. Conn. Jan. 3, 2022) (Plaintiff "is not required to plead the exhaustion of remedies in the complaint."). "Where it is not clear, the court may convert the defendant's motion to one for summary judgment 'limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused.'" *Mateo*, 2010 WL 3199690, at *2 (quoting *McCoy v. Goord,* 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)). Here, the parties have not submitted affidavits or other evidence to support their claims. Thus, the Court cannot determine this issue on a motion to dismiss or convert the Defendant's motion to one of summary judgment.

Accordingly, the motion to dismiss Count Two of the Amended Complaint on the ground that Plaintiff did not fully exhaust his available administrative remedies and/or was not thwarted from doing so is denied. Defendant is not precluded from raising the defense of exhaustion of administrative remedies in a motion for summary judgment.

## V. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss Count Two of the Amended Complaint [**ECF No. 72**] is **DENIED**. Defendant is directed to file an answer to the complaint within twenty-one days of the date of this Order.

This is not a recommended ruling.  The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  ECF No. 65.  Appeals may be made directly to the appropriate United States Court of Appeals.  *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).  It is so ordered.

*/s/ Maria E. Garcia, USMJ*
Hon. Maria E. Garcia
United States Magistrate Judge